UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

HENRY AND KELLY WELLMEYER                      CIVIL ACTION

v.                                             NO. 06-1585

ALLSTATE INSURANCE COMPANY and                 SECTION "F"
KELT INSURANCE AGENCY, LLC

ORDER AND REASONS

Before the Court is Allstate's motion for summary judgment on liability under a homeowner's insurance policy. For the reasons that follow, Allstate's motion is DENIED.

Background

This motion raises two issues common to many Katrina-storm damages: May an insured recover both flood and wind coverage payments, and, if so, what are the limits of such a recovery?

Allstate issued a homeowner's policy to the Wellmeyers on their property located at 3540 Van Cleave Drive, in Mereaux, Louisiana; this policy specifically excludes damage caused by flood waters. Allstate, acting as a Write-Your-Own company under the National Flood Insurance Program, also issued a flood policy to the Wellmeyers covering the same property; this policy excludes damage caused by perils other than floods.

Hurricane Katrina severely damaged the Wellmeyers' multistory home and contents in August 2005; over ten feet of flood water inundated the residence. After the hurricane, the Wellmeyers

submitted a claim under their flood insurance policy. A flood adjuster estimated the pre-hurricane actual cash value of the Wellmeyers' home at $200,233. The Wellmeyers' flood insurance payments were based on this figure. The Wellmeyers have been paid $241,000 under their flood policy, covering $191,000 for their dwelling and $50,000 for the contents.

The Wellmeyers also made a claim under their homeowner's policy. They have been paid $4,880.65 for their dwelling, $2,500 for additional living expenses, and $6,197.22 for mold-related damage. The full homeowner's policy limits are, however, $182,226 for the dwelling, $18,223 for other structures, $127,559 for contents, and additional living expenses up to twelve months.

I.

A.   Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this

determination, a court "must view the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., 292 F.3d 471, 478 (5th Cir. 2002).

### B. National Flood Insurance Program

Congress established the National Flood Insurance Program (NFIP) by enacting the National Flood Insurance Act of 1968, Pub. L. No. 90-448, §§ 1302-1376, 42 U.S.C. §§ 4001-28. Cent. Claims Serv., Inc. v. Computer Sci. Corp., 706 F. Supp. 463, 465 (E.D. La. 1989). The program's intent was "to provide flood insurance protection to property owners in flood-prone areas under national policy promulgated by the Federal Emergency Management Agency (FEMA)." Id. In 1983, Congress also adopted a program to permit insurance companies to write their own flood insurance policies, remitting the premiums to the Flood Insurance Administration. In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2007 WL 60969, at *2 (E.D. La. Jan. 8, 2007). Write-your-own companies "draw money from FEMA through letters of credit to disburse claims," and, consequently, "United States Treasury Funds are used to pay the insured's claims." Id.

## II.

### A. Flood Versus Wind

Allstate first urges the Court to estop the Wellmeyers from claiming that wind, a covered peril under their homeowner's policy,

damaged their home.  The thrust of Allstate's argument is that, by collecting flood policy money pursuant to the National Flood Insurance Program, the Wellmeyers have made a statement against interest, revealing that their home was, in fact, damaged by floods and may not now claim damage also by wind.  Allstate's claim, however, does not withstand scrutiny.  It fails to recognize the obvious: that a combination of wind and flooding may have possibly damaged the Wellmeyers' home.  Subject to a discussion regarding the limits of recovery, nothing bars the Wellmeyers from collecting under their homeowner's policy for wind damage and from collecting under their flood policy for flood damage if they can segregate and prove the two types of damages.[1]

### B.  The Limits of Recovery

Allstate's alternative claim that the Wellmeyers may not enjoy a double recovery for the same lost property, however, is not without merit.  Allstate contends that, at most, the Wellmeyers can only recover the maximum amount of their actual loss; that they can

---

[1] The Wellmeyers claim that although the first floor of their home was flooded, the upper floor and roof were damaged by wind and rain.  Allstate acknowledges that the Wellmeyers' home was inundated with ten feet of water.  Clearly, the ten feet of water could not have destroyed the roof of the house and probably would not have destroyed contents on the second floor of the home. But, under Allstate's theory, by accepting flood proceeds to cover the flood damage on the lower floor, the Wellmeyers are barred from recovering for wind damage on the upper floor, even though the Wellmeyers have paid premiums on their homeowner's policy to cover perils specifically excluded by their flood insurance policy.  Allstate seems to condone this brazen Catch-22.

recover no more than the actual value of their home, its contents, and their living expenses.

Two other Sections of this Court have recently considered substantially the same issue.  Judge Vance took up a summary judgment motion by Allstate in which the plaintiffs collected flood policy proceeds of $250,000 on a building, and Allstate paid $42,128.18 under a separate homeowner's policy for damage to the property.  Weiss v. Allstate Ins. Co., No. 06-3774, 2007 WL 891869, at *1 (E.D. La. Mar. 21, 2007).  The plaintiffs asserted, however, that their property had a pre-storm value of at least $612,500, and they sought greater compensation under their homeowner's policy to "cover the wind damage to the upper two floors of the dwelling and the contents contained therein."  Id.  Judge Vance concluded that material issues of fact existed as to the value of the plaintiffs' home and whether the plaintiffs had admitted that their property was damaged solely by flooding (as opposed to additional and segregable wind damage), and therefore summary judgment was inappropriate.  Id. at *2-3.

Judge Zainey also considered a nearly identical summary judgment motion, again with Allstate as the defendant.  Esposito v. Allstate Ins. Co., No. 06-1837, 2007 WL 1125761 (E.D. La. Apr. 16, 2007).  In that case, the plaintiff received $185,265 for damage to his building's structure.  Id. at *1.  The plaintiff then "contend[ed] that wind caused a total loss of the property and . . .

. [sought] the full policy limits on his homeowner's policy." Id. Judge Zainey, relying on Judge Vance's Weiss decision, determined summary judgment in favor of Allstate was appropriate. See id. at *2. The court acknowledged that the plaintiff "is entitled to recover in this lawsuit any <u>previously uncompensated</u> losses that are covered by his homeowner's policy <u>and which when combined with his flood proceeds do not exceed the value of his property</u>." Id. (emphasis in original). But because the plaintiff had already received compensation for the full value of his property, he was not entitled to

> recharacteriz[e] as wind damage those losses for which he has already been compensated by previously attributing them to flood waters. The NFIP program did not <u>erroneously</u> make payments to Plaintiff for flood losses to his home. Plaintiff sought those payments and he obtained them by convincing FEMA that his losses were caused by flood and covered by his flood policy. Plaintiff has now been compensated for those losses . . . .

Id. (emphasis in original).[2]

---

[2] See also Weiss, 2007 WL 891869 at *3 (noting the "well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss"); Tejedor v. State Farm Fire & Cas. Co., No. CIVA1:05CV679LTS-RHW, 2006 WL 325726, at *2 (S.D. Miss. Nov. 6, 2006) ("[T]he Plaintiff's actual loss is the maximum recovery he may receive from all applicable policies of insurance for both his dwelling and personal property. [I]t is a basic proposition that '[i]nsurance law is based on the principle of indemnification and is aimed at reimbursement. The benefit derived from insurnace should be no greater in value than the loss.' (quoting Estate of Murrell v. Quin, 454 So. 2d 437, 444 (Miss. 1984) (Prather, J., dissenting)); Cole v. Celotex Corp., 599 So. 2d 1058, 1080 (La. 1992) ("'As a general rule the

It is clear, on this record, that summary judgment is inappropriate at this point. Although an insured cannot recover twice for a single loss, Allstate claims that the Wellmeyers' home is worth $200,233, drawing attention to a number reached by a flood adjuster. But the Wellmeyers have been paid $191,000 under their flood policy and $4,880.65 under their homeowner's policy for damage to their home. This leaves a difference of $4,352.35 between the value of the home (as estimated by a flood insurance adjuster) and the amount already paid to the Wellmeyers. If the Wellmeyers can marshal facts that a peril covered by the homeowner's policy (wind) caused uncompensated damage, they could be entitled to indemnity.[3]

Similarly, there are also unresolved issues of material fact relating to the damage of the contents within the home, "other structures" covered under the homeowner's policy, and the amount of

---

claimant may recover under all available coverages provided that there is no double recovery.'  15A Couch on Insurance 2d, § 56:34 (1983); [s]ee also 8D Appleman, Insurance Law and Practice, § 5192 (1981) (noting that under pro-stacking rule, while an insured may not recover in excess of his actual loss, an insured may recover under each policy providing coverage until the total loss sustained is indemnified)."; State Farm Fire & Cas. Co. v. Griffin, 888 S.W.2d 150, 156 (Tex. App. 1994) ("An insurance contract is by definition a contract of indemnity, under which an insurer cannot be required to pay its insured more than the amount of his actual loss.").

[3] The Court also notes that there is a dispute as to the value of the home. Allstate, in its uncontested issues of material fact, states that a flood adjuster determined the actual value of the Wellmeyers' home to be $200,233. But the Wellmeyers maintain that the value of their home is "higher than" $201,000.

living expenses.  The Wellmeyers estimate the loss of their contents at approximately $105,000; they have received $50,000 from the flood policy and nothing from the homeowner's policy.  They further claim a shed existed on their property that is covered by the homeowner's "other structures" coverage; they have received no compensation for this claim.  Consequently, if the Wellmeyers can demonstrate that segregable wind damage caused uncompensated damage, they will be entitled to some undetermined compensation.  Finally, the Wellmeyers claim that they spent approximately $15,000 in living expenses, but have only received $2,500 under the homeowner's policy to cover these expenses.  Thus, the extent of all of their damage claims is unresolved and patently fact-driven.

Accordingly, Allstate's motion for summary judgment is DENIED.


New Orleans, Louisiana, April 26, 2007.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE